PHILIP A. MCLEOD, CASB No. 101101
philip.mcleod@kyl.com
ALEXANDER J. CASNOCHA, CASB No. 278803
alexander.casnocha@kyl.com
KEESAL, YOUNG & LOGAN
A Professional Corporation
450 Pacific Avenue
San Francisco, California  94133
Telephone:   (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Plaintiff
TRANSAMERICA FINANCIAL ADVISORS, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRANSAMERICA FINANCIAL ADVISORS, INC., <br><br>                    Plaintiff, <br><br>    vs. <br><br> PAMELA GRAVIET, <br><br>                    Defendant. | Case No. _____ <br><br> **COMPLAINT FOR DECLARATORY RELIEF AND PERMANENT INJUNCTION** |

## THE PARTIES

1.  Plaintiff TRANSAMERICA FINANCIAL ADVISORS, INC. ("TFA" or "Plaintiff"), formerly known as World Group Securities, Inc. ("WGS"), is a Delaware corporation, headquartered in St. Petersburg, Florida. On or about January 6, 2012, WGS was merged into TFA. TFA is the successor in interest to WGS (now known as the Transamerica Financial Group Division ("TFG") of TFA), a broker-dealer formerly registered with the United States Securities and Exchange Commission ("SEC"), and the California Corporations Commission. TFA is a broker-dealer registered with the United States Securities and Exchange Commission ("SEC"), and the California Corporations Commission. TFA, WGS and TFG are collectively referred to as "TFA."

2. TFA is a member of the Financial Industry Regulatory Authority ("FINRA").

3. Defendant PAMELA GRAVIET ("Ms. Graviet") is an individual residing in Galt, California.

## JURISDICTION

4. This Court may exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000.

5. This action is brought by TFA for declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202, for the purpose of determining a question of actual controversy between the parties as set forth herein.

## GENERAL ALLEGATIONS

6. On or about November 16, 2011, Ms. Graviet filed an arbitration with Financial Industry Regulatory Authority Dispute Resolution ("FINRA-DR") entitled, <u>Pamela Graviet v. World Group Securities, Inc.</u>, FINRA-DR Case No. 11-04290, against WGS by filing a Statement of Claim (the "Statement of Claim") (See concurrently filed Declaration of Alexander J. Casnocha, Ex. A).

7. The Statement of Claim alleges that in October and November 2006 WGS Representatives Lori Wagner ("Wagner") and Zana Curry ("Curry"), under the direction of Michael McCurdy ("McCurdy"), wrongfully solicited Ms. Graviet to re-finance her home mortgage and to use some of the proceeds to buy three products, one of which was an Indexed Accumulator II equity indexed universal life policy (the "Equity Indexed Accumulator II policy"), which was issued by Pacific Life Insurance Company ("PacLife"). (Statement of Claim, ¶¶ 6, 8 and 13).

8. Ms. Graviet seeks damages arising out of her transactions with Wagner and Curry, including the re-finance of her home mortgage and the purchase of the Equity Indexed Accumulator II policy. (Statement of Claim, ¶ 19).

9. Ms. Graviet's claims against WGS that relate to (1) the re-finance of her home mortgage, and (2) the Equity Indexed Accumulator II policy (together, the "non-arbitrable transactions"), are not subject to FINRA-DR jurisdiction.

10. FINRA-DR Code of Arbitration Procedure (the "Code"), section 12200 provides:

> Parties must arbitrate a dispute under the Code if:
> - Arbitration under the code is either
>   (1) Required by written agreement, or
>   (2) Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; **and**
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

(Emphasis added.) A true and copy of section 12200 of the Code is attached hereto as **"Exhibit A."**

11. There is no written agreement between Ms. Graviet and WGS to arbitrate disputes arising from the re-finance of her home mortgage or her purchase of the Index Accumulator II policy.

12. WGS did not and does not offer or participate in home loans, or loan modifications, including Ms. Graviet's re-finance of her home mortgage, although a non-member affiliate, World Financial Group, Inc. ("WFG") did allow its independent contractor Associates, such as Curry and Wagner and Michael McCurdy ("McCurdy"), to affiliate with third party mortgage brokers for purposes of engaging in the mortgage brokerage business through such mortgage brokers.

13. WGS did not sell Ms. Graviet the Indexed Accumulator II policy which is purely an insurance product and not a security. Equity Indexed Universal Life

Insurance ("EIUL") Policies, such as the Indexed Accumulator II policy, are not required to be registered under applicable federal or state securities laws nor are purchases of EIULs required to be executed through a registered broker-dealer.  Ms. Graviet's purchase of the Indexed Accumulator II policy, an EIUL, was not executed by, through, or on the books of WGS.  The purchase of the Equity Indexed Accumulator II policy was executed through WGS' non FINRA member affiliate, World Financial Group Insurance Agency, Inc. ("WFGIA").

14.   TFA does not consent to FINRA-DR's jurisdiction over Ms. Graviet's non-arbitral claims.

### FIRST CLAIM FOR RELIEF:  DECLARATORY RELIEF
### (28 U.S.C. §§ 2201 & 2202; TFA against Ms. Graviet)

15.   TFA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 14, inclusive, as though they were fully set forth in this claim for relief.

16.   TFA also has not consented to arbitrate the non-arbitrable transactions by way of a written agreement to arbitrate.

17.   There exists an actual controversy as between TFA on the one hand, and Ms. Graviet on the other, as to the jurisdictional authority of FINRA-DR to hear claims presented by Ms. Graviet against TFA for acts pertaining to the non-arbitrable transactions.

18.   This actual controversy is within the jurisdiction of the Court and involves the rights and liabilities of the parties, which controversy may be determined by a judgment of this Court, without other suits pursuant to 28 U.S.C. sections 2201 and 2202.

## SECOND CLAIM FOR RELIEF: PERMANENT INJUNCTION AGAINST GRAVIET WITH RESPECT TO THE NON-ARBITRABLE TRANSACTIONS

### (TFA against Ms. Graviet)

19. TFA realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 18, inclusive, as though they were fully set forth in this claim for relief.

20. The legal remedy in this instance is wholly inadequate because it would require TFA to arbitrate claims before FINRA-DR which it neither contractually agreed to arbitrate, nor is required to arbitrate pursuant to FINRA rules, including the Code of Arbitration Procedure.

21. TFA is likely to prevail because the TFA is not required to proceed in arbitration under the FINRA Code of Arbitration Procedure for claims that do not arise in connection with TFA's business activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff TRANSAMERICA FINANCIAL ADVISORS, INC. prays for relief against Defendant PAMELA GRAVIET:

1. For a declaration and determination that Ms. Graviet is permanently barred and enjoined from proceeding with the portion of the Statement of Claim relating to the non-arbitrable transactions that is presently on file with FINRA-DR against TFA;

2. For a declaration and determination that Ms. Graviet is permanently barred and enjoined from presenting a claim in arbitration before FINRA-DR against TFA for any acts, omissions to act or damages which occurred as a result of the non-arbitrable transactions; and

//
//
//
//

COMPLAINT FOR DECLARATORY RELIEF AND PERMANENT INJUNCTION

3. That TFA be awarded any other and further relief as the Court deems just and proper.

DATED: June 26, 2012

_____
PHILIP A. MCLEOD
ALEXANDER J. CASNOCHA
KEESAL, YOUNG & LOGAN
Attorneys for Plaintiff
TRANSAMERICA FINANCIAL
ADVISORS, INC.
E-mail: philip.mcleod@kyl.com
         alexander.casnocha@kyl.com

# EXHIBIT "A"



Print

## 12200. Arbitration Under an Arbitration Agreement or the Rules of FINRA

The Customer Code applies to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Customer Code apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new Code.

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Amended by SR-FINRA-2008-021 eff. Dec. 15, 2008.
Adopted by SR-NASD-2003-158 eff. April 16, 2007.

**Selected Notices:** 07-07, 08-57.

©2008 FINRA. All rights reserved.