1  **JOSHUA B. KONS, CASB NO. 244977**
2  **joshuakons@konslaw.com**
3  **OF COUNSEL TO:**
4  **ECCLESTON LAW OFFICES, P.C.**
5  **One North Franklin St. Suite 2620**
6  **Chicago, Illiniois 60606**
7  **Telephone: (312) 332-0000**
8  **Facsimile: (312) 332-0003**
9
10  **Attorney for Defendant**
11  **PAMELA GRAVIET**
12
13
14                    **UNITED STATES DISTRICT COURT**
15
16                    **EASTERN DISTRICT OF CALIFORNIA**
17
18
19  **TRANSAMERICA FINANCIAL** )        **Case No. 2:12-cv-01703-GEB-DAD**
20  **ADVISORS, INC.,**            )
21                            )
22                **Plaintiff**   )        **DEFENDANT'S OPPOSITION**
23                            )        **TO PLAINTIFF'S MOTION**
24                            )        **FOR PRELIMINARY**
25                            )        **INJUNCTION, MOTION TO**
26  **vs.**                      )        **COMPEL ARBITRATION**
27                            )        **AND ALTERNATIVE MOTION**
28                            )        **TO DISMISS**
29  **PAMELA GRAVIET,**          )
30                            )
31                **Defendant.**
32
33
34
35                      **THE PARTIES**
36
37       1.      Plaintiff  TRANSAMERICA  FINANCIAL  ADVISORS,  INC.  ("TFA"  or

38  "Plaintiff"),  formerly  known  as  World  Group  Securities,  Inc.  ("WGS")  is  a  Delaware

39  corporation, headquartered in St. Petersburg, FL.  On or about January 6, 2012, WGS was

40  merged into TFA.  TFA is the successor in interest to WGS.  WGS was a broker-dealer formerly

1

1   registered with, and subject to the rules and regulations of the Securities and Exchange

2   Commission ("SEC") as well as the Financial Industry Regulatory Authority ("FINRA").  TFA

3   is a broker-dealer registered with the SEC as well as FINRA. WGS and TFA are collectively

4   referred to herein as "TFA."

5       2.      Defendant PAMELA GRAVIET ("Ms. Graviet" or "Defendant") is an individual

6   residing in Galt, California and was a customer of WGS.

7
8                                **INTRODUCTION**
9
10      3.      Defendant Pamela Graviet hereby opposes Plaintiff's Motion for Preliminary

11  Injunction, and moves this Court to compel arbitration of this action under Section 4 of the

12  Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.  Defendant alternatively moves to dismiss the

13  Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim for

14  relief. The grounds in support of this Opposition and Motions are set forth below.

15      4.      TFA's declaratory judgment action is an improper end-run around a pending

16  arbitration proceeding.  The complaint purports to seek a declaration regarding the rights of the

17  parties in the ***pending arbitration proceeding***, and an injunction effectively dismissing a portion

18  of the arbitration. Specifically, in its complaint and motion, TFA mischaracterizes the nature of

19  the relationship between the parties as well as the nature and scope of arbitration case number

20  11-04290, currently pending before a panel of arbitrators convened by the Financial Industry

21  Regulatory Authority Dispute Resolution, Inc. ("FINRA-DR") ("the Arbitration"), in a veiled

22  attempt to bifurcate claims which are inextricably intertwined and otherwise compromise an

23  arbitration proceeding which it has already substantially participated in.  For the reasons set forth

24  below, Plaintiff's contentions are simply without merit. Based on controlling Supreme Court

2

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1   law, the Court must compel the parties to complete the pending arbitration proceeding.

2   Accordingly, Ms. Graviet respectfully requests that this Court deny TFA's Motion and grant Ms.

3   Graviet's Motion to Compel Arbitration.

4       5.      Specifically, this Court should deny TFA's Motion because it cannot meet the

5   legal standard necessary for a preliminary injunction.  As will be explained below, contrary to

6   TFA's Motion, TFA is *not* likely to succeed on the merits of its underlying claim because: 1) Ms.

7   Graviet was a customer of WGS and is entitled to bring her claims in arbitration pursuant to

8   FINRA rules; 2) TFA is required to arbitrate Ms. Graviet's claims because, contrary to TFA's

9   mischaracterization of Ms. Graviet's claims, they do arise in connection with the business

10  activities of TFA's predecessor and FINRA member, WGS; 3) Ms. Graviet's claims are

11  inextricably intertwined and cannot be divided by transaction or product-type and, as a result,

12  must be decided by the arbitration panel; and 4)  TFA has waived its right to object to the

13  jurisdiction of the arbitration panel because it has substantially participated in the arbitration

14  proceedings.

15                              **BACKGROUND**

16
17
18      6.      On or about November 15, 2011, Ms. Graviet filed a Statement of Claim against

19  WGS, a FINRA member firm (a copy of the Statement of Claim is attached hereto as **Exhibit**

20  **A**).  In her Statement of Claim, Ms. Graviet, through her attorneys, alleged, among other things,

21  that WGS was negligent in that it failed to adequately supervise the activities of its agent

22  financial advisors and registered representatives, Lori Wagner ("Wagner") and Zanna Curry

23  ("Curry"), as it was obligated to do pursuant FINRA rules (copies of both Wagner and Curry's

24  Central Registration Depository Information evidencing their registration with both FINRA and

                                    3

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1    specifically, their employment with WGS during the relevant time period is attached hereto as

2    **Exhibit B**.)

3        7.      Specifically, Ms. Graviet alleges that during 2006, acting within the scope of their

4    employment as financial advisors of WGS, Wagner and Curry solicited Ms. Graviet and made a

5    financial recommendation which, among other things, included a plan to refinance the mortgage

6    on Ms. Graviet's home for the purpose of extracting proceeds to invest in life insurance and

7    variable annuity products.   As mentioned above, Ms. Graviet also alleges that WGS was

8    negligent in that it failed to maintain an adequate system of supervision reasonably calculated to

9    supervise its registered representatives, including, but not limited to Wagner and Curry.

10       8.      The Plaintiff would have this Court believe that despite WGS's legal obligation to

11   adequately supervise Wagner and Curry's activities, it is not bound to arbitrate certain of Ms.

12   Graviet's claims because certain transactions recommended by Wagner and Curry were not

13   ultimately reflected "on the books" of WGS, but rather "on the books" of its affiliate companies,

14   World Financial Group and World Financial Group Insurance Agency, Inc.  Plaintiff's argument

15   is without merit because, as will be explained below, WGS was obligated to adequately

16   supervise all of its agents' activities. Ms. Graviet's claims (e.g. negligence, breach of fiduciary

17   duty) cannot be bifurcated by transaction or product-type.

18                          **MEMORANDUM OF LAW**

19

20   **I.     TFA Is Not Entitled to a Preliminary Injunction**

21       9.      "A plaintiff seeking a preliminary injunction must establish that [it] is likely to

22   succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary

23   relief, that the balance of equities tips in his favor, and that an injunction is in the public

4

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1   interest." Winter v. Natural Resources Defense Council, 129 S.Ct. 365, 374 (2008).  Further, "an

2   injunction is a matter of equitable discretion" and is "an extraordinary remedy that may only be

3   awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 376, 381.

4          10.    As will be discussed below, TFA is not entitled to an injunction because it is not

5   likely to succeed on the merits of its request for an injunction, it will not suffer irreparable harm

6   and the balance of equity tips in favor of Ms. Graviet, who has suffered (and continues to suffer)

7   as a result of TFA's predecessor wrongdoing.

8
9          II.    **The Underlying Dispute is Subject to Binding Arbitration**
10
11         11.    The Federal Arbitration Act ("FAA") reflects an "emphatic federal policy in favor

12  of arbitral dispute." KMPG v. Cocchi, LLC, ___ U.S. ___, 132 S. Ct. 23, 25 (2011); see also

13  Moses H. Cone Mem. Hosp. v. Mercury Contruction Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941

14  (1983) (There is a "strong federal policy favoring arbitration").

15
16         1. **Justiciability arguments must be decided by the arbitrators.**
17
18         12.    Based on controlling Supreme Court law, to the extent the Plaintiff has any

19  justiciability argument, that argument must be decided by the arbitrators—not this Court.  See,

20  e.g., Howsam v. Dean Witter Reynolds, 537 U.S. 79, 123 S. C. 588, 592 (2002) ("procedural

21  questions which grow out of the dispute and bear on its final disposition are presumptively not

22  for the judge, but for an arbitrator to decide.").  Moreover, ambiguities as to the scope of

23  arbitration are also to be resolved in favor of arbitration. Volt Info Sciences, Inc. v. Board of

24  Trustees, 489 U.S. 468, 476, 109 S. Ct. 1248, 1254 (1989). See also Green Tree Financial Corp.

25  v. Bazzle, 539 U.S. 444, 452, 123 S. Ct. 2402, 2407 (2003) ([I]f there is doubt about that matter-

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1    about the 'scope of arbitrable issues-we should resolve that doubt in favor of arbitration.")

2    (citations omitted).

3    13.    Contrary to the Plaintiff's Motion, the scope of Ms. Graviet's claims in the

4    arbitration is not limited to or defined by specific transactions or products.  To the contrary, in

5    her Statement of Claim, Ms. Graviet has asserted claims for violations of the California

6    Consumer Legal Remedies Act, Breach of Fiduciary Duty, Breach of Contract and

7    Negligence/Negligent Supervision.   As will be explained below, the specific products or

8    transactions, involved are inextricably intertwined and cannot simply be separated out.

9    Nonetheless, any question regarding whether certain transactions are "arbitrable" or "non-

10   arbitrable," is an issue of scope to be decided by the arbitrators.

11
12       **2.  FINRA Code of Arbitration Procedure compels TFA to arbitration because,**
13            **pursuant to FINRA Rule 12200, Ms. Graviet, as a customer of WGS, has requested**
14            **arbitration and the claim arises in connection with the business activities of the**
15            **member.**
16
17   14.    As mentioned above, TFA (formerly WGS) is a broker-dealer/securities firm

18   registered with FINRA.  As such, it is bound by all FINRA rules and regulations.  As a general

19   matter, FINRA has the authority to exercise comprehensive oversight over all securities firms

20   that do business with the public. Sacks v. SEC, 648 F.3d 945, 948 (9th Cir. 2011).  FINRA rule

21   12200 of the FINRA Code of Arbitration Procedure (a copy of which is attached hereto as

22   **Exhibit C**), provides, in relevant part:

23

24

25

6

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

*Parties must arbitrate a dispute if: Arbitration under the Code if either:*

    -    *(1)    Required by written agreement, or*
    -    *(2)    Requested by the customer*

    -    *The dispute is between a customer and a member or associated person of a member; and*

    -    *The dispute arises in connection with the business activities of the member or the associated person, except dispute involving the insurance business activities of a member that is also an insurance company.*

15.    Ms. Graviet acknowledges that there is no written agreement between she and WGS that specifically provides for the arbitration of disputes arising from the refinance of her home mortgage or her purchase of the Index Accumulator II policy; however, contrary to TFA's Motion, Ms. Graviet is entitled to seek arbitration because she was a customer of WGS and her claims arise in connection with the business activities of WGS.

16.    Although the issue of who, specifically, is a "customer" within the meaning of FINRA rule 12200 remains unaddressed by the Ninth Circuit, other courts have generally construed the term "customer" very broadly. <u>John Hancock Life Insurance, Co. v. Wilson</u>, 254 F.3d 48, 59 (2nd Cir. 2001). Moreover, other courts have held that absent a written agreement to arbitrate, the FINRA Code serves as a sufficient agreement to arbitrate, binding its members to arbitrate a variety of claims with third-party claimants. <u>O.N. Equity Sales Co. v. Steinke</u>, 504 F.Supp.2d 913, 916 (C.D. Cal. 2007). Additionally, other courts have stated that the term "customer" should not be limited to only those receiving investment or brokerage services. <u>UBS Financial Services, Inc. v. West Virginia University Hospitals, Inc.</u>, 660 F.3d 643, 652 (2nd Cir.

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1    2011).   Instead, a court must look at the nature of the relationship between the investor and the

2    FINRA member. BMA Financial Services, Inc., 164 F.Supp.2d 819, 820 (8th Cir. 2001).

3         17.    In any event, whether or not Ms. Graviet was a "customer" of WGS is, again, a

4    matter for the arbitrators to decide.   As the Supreme Court ruled in Howsam, "the [FINRA]

5    arbitrators more comparatively expert about the meaning of their own rule, the arbitrators are

6    comparatively better able to interpret and to apply [them]". Howsam, 537 U.S. at 85.

7         18.    As for the nature of the relationship between Ms. Graviet and WGS, WGS was

8    full-service securities broker-dealer and FINRA member firm.   WGS agents acting on behalf of

9    WGS held themselves out to Ms. Graviet as possessing superior knowledge and expertise in the

10   area of wealth management, investment and insurance planning.   As mentioned above, Wagner

11   and Curry were acting within their capacities as registered representatives of WGS when they

12   recommended to Ms. Graviet that she refinance the mortgage on her home for the purpose of

13   investing the proceeds in various financial products. Ms. Graviet, who is an unsophisticated

14   investor, placed her complete trust and confidence in WGS and was certainly under the

15   impression that she was a customer of WGS when its registered representatives presented her

16   with the aforementioned plan.   Importantly, WSG was obligated to supervise the activities of its

17   agents. Specifically, FINRA Rule 3010 provides, in relevant part:

18              *Each member shall establish and maintain a system to supervise*
19              *the activities of each registered representative and associated*
20              *person that is reasonably designed to achieve compliance with*
21              *applicable securities laws and regulations, and with applicable*
22              *NASD Rules.  Final responsibility for proper supervision shall rest*
23              *with the member.*
24

25        19.    The aforementioned rule applies to all FINRA member firms, irrespective of

26   whether or not the firm views its agents as "independent contractors."   Importantly, the

8

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1   Securities and Exchange Commission does not recognize the concept of an "independent

2   contractor." Accordingly, at all times material hereto, WGS was obligated to supervise all of

3   Wagner and Curry's activities.

4          20.     Notably, the Securities and Exchange Commission brought an action against

5   WGS for failing to adequately supervise the activities of its registered representatives in

6   connection with their recommendations to use home equity proceeds to purchase variable

7   universal life insurance policies. (A copy of the Order Instituting Administrative Proceedings

8   Pursuant to Section 15(b) of the Securities Exchange Act of 1934, Making Findings, and

9   Imposing Remedial Sanctions is attached hereto as **Exhibit D**). Clearly, if the Securities and

10  Exchange Commission was of the opinion that WSG's registered representatives'

11  recommendations to customers to use home equity to purchase insurance products was a

12  business activity that WSG was obligated to supervise, then Ms. Graviet's nearly identical claim

13  likewise involves the "business activities" of WGS and is arbitrable within the context of FINRA

14  Rule 12200.

15
16  **3.  Ms. Graviet's Claims Are Inextricably Intertwined and Must be Arbitrated**
17
18         21.     In its Complaint and Motion for Injunction, Plaintiff mischaracterizes the nature

19  of Ms. Graviet's Statement of Claim in an attempt to oversimplify and sever Ms. Graviet's

20  claims into various products (e.g. a mortgage, a life insurance product and a variable insurance

21  product). As explained above, certain of Ms. Graviet's claims (e.g. negligence, breach of

22  fiduciary duty) and the products involved are inextricably intertwined.

23         22.     Claims which are inextricably intertwined should be submitted to arbitration

24  together. McMahan Securities Co., LP v. Forum Capital Markets, L.P., 35 F.3d 82, 87-88 (2nd

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1    Cir. 1994).  Moreover, "any doubt concerning the scope of arbitral issues should be resolved in

2    favor of arbitration."  <u>Moses H. Cone Mem. Hosp.</u> at 24-25.

3          23.     Plaintiff wrongly argues that, pursuant to FINRA Rule 12200 above, it does not

4    have to arbitrate Ms. Graviet's claims that relate to the refinance of her home mortgage or her

5    subsequent purchase of an insurance product because they do not relate to WSG's "business

6    activities".  Plaintiff's argument is without merit.  As detailed above, WGS was in the business

7    of providing wealth management, investment and insurance planning and was obligated to

8    supervise the activities of its registered representatives providing such advice.

9          24.     WGS registered representatives, acting within the scope of their employment of

10   WGS, made an investment recommendation to Ms. Graviet which included a plan to refinance

11   her home to extract investable proceeds to invest in various products.[1]  More importantly, Ms.

12   Graviet alleges that contrary to FINRA rules, WGS failed to adequately supervise the activities

13   of its agents, which was the proximate cause of Ms. Graviet's damages.  As explained above, the

14   Securities and Exchange Commission was clearly of the opinion that WSG was obligated to

15   supervise this exact activity by its agents.  Put another way, the investment recommendations,

16   mortgage, insurance products and negligent supervision are inextricably intertwined, cannot

17   simply be severed and must be arbitrated together.

18
19   **4.  TFA Has Waived its Right to Object to the Jurisdiction of the Arbitration Panel**
20
21         25.     As outlined above, Ms. Graviet filed a Statement of Claim against WGS in

22   November of 2011.  Instead of filing their Complaint for Declaratory Relief with this Court at

---

[1] Upon information and belief at least one agent of WGS's former parent company, World Financial Group, was closely associated with the mortgage broker recommended to Ms. Graviet by WGS, Quick Mortgage Services, for the purpose of refinancing her home mortgage.

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1   that time, TFA (then WGS) filed its Answer on or about February 1, 2012 (a copy of which is

2   attached hereto as **Exhibit E**), signed a Submission Agreement, participated in the Initial Pre-

3   Hearing Conference (scheduling conference) with the arbitration panel and engaged in discovery.

4          26.    In its Answer, WGS attempts improperly sever Ms. Graviet's claims which, as

5   explained above, are inextricably intertwined.  Moreover, WGS proceeded to actively participate

6   in the arbitration process concerning all claims.  Accordingly, Plaintiff and has waived its right

7   to object to the arbitration panel's jurisdiction.  An agreement to arbitrate an issue may not be

8   express; however, it may be implied from the conduct of the parties.  Fortune "Alsweet &

9   Eldridge, Inc. v. Daniel, 724 F.2d 1355, 1356 (9th Circ. 1983).  Additionally, the 9th Circuit has

10  found that a party waives objection to arbitration when a party tries to object after it was actively

11  participating in the arbitration, but before an award was issued.  Id. at 1357.

12         27.    As mentioned above, WGS actively participated in the arbitration by filing its

13  Answer, participating in a pre-trial hearing and engaging in discovery.  Specifically, on May 3,

14  2012, counsel for both parties participated in an Initial Pre-Hearing Conference with the

15  arbitration panel for the purpose of: 1) accepting the panel; 2) scheduling the arbitration hearing;

16  and 3) establishing relevant discovery deadlines.  Importantly, counsel for Plaintiff accepted the

17  composition of the arbitration panel and at no time raised any objection regarding the panel's

18  jurisdiction over specific claims.  Moreover, as mentioned above, the Plaintiff has already

19  substantially participated in the discovery process.  Accordingly, Plaintiff has clearly waived its

20  right to object to the jurisdiction of the arbitration panel.

21

22

11

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

**III.   TFA Will Not Suffer Irreparable Harm if its Request for an Injunction is Denied**

28.   Contrary to Plaintiff's Motion, TFA will not suffer irreparable harm if its request for a temporary injunction is not granted. Importantly, a California court has held that undergoing arbitration proceedings *does not* constitute irreparable injury. "The party objecting to arbitration might well suffer no harm at all, irreparable or otherwise, for the arbitration panel may decide in its favor." Camping Const. co. v. District Council of Iron Workers, 915 F.2d 1333, 1349 (9th Cir. 1990).  Further, any arbitration award obtained by the party seeking arbitration will have no preclusive effect in a subsequent confirmation or *vacatur* proceeding…[t]he law leaves parties….with a perfectly adequate legal remedy for an improper award." Id.

29.   Accordingly, TFA simply will not suffer irreparable harm if it is forced arbitrate "issues" which it perceives to be "arbitrable" or "non-arbitrable" because, contrary to its Motion, its rights will not be lost forever.  TFA may prevail at arbitration.  However, even it does not prevail at arbitration, it may later seek to vacate any adverse award in a court of law.

**IV.   The Balance of Equity Tips in Favor of Ms. Graviet and the Proposed Injunction is Not in the Public Interest**

30.   Also contrary to Plaintiff's Motion, in evaluating whether or not a preliminary injunction should be issued, the balance of hardships weighs in favor of Ms. Graviet and not TFA. Ms. Graviet has already suffered and continues to suffer financially as a result of WGS' negligence and the misconduct perpetrated by its agents.   Any injunction (temporary or permanent) granted by this Court will force Ms. Graviet to expend additional time and resources seeking justice in both the FINRA arbitration as well as in federal court and will further serve

12

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1    delay any opportunity she has to be made whole.   TFA, on the other hand, with vastly greater

2    financial resources, will not suffer any hardship if the injunction is not granted.

3        31.   As outlined above, the FAA reflects a federal policy in favor of arbitral dispute as

4    an efficient and cost effective method of dispute resolution.   Any injunction granted by this

5    Court as a result of Plaintiff's Motion will effectively eviscerate this policy and is not in the

6    public interest.

7                               **<u>CONCLUSION</u>**

8        32.   As discussed in detail above, the Court must deny Plaintiff's Motion for an

9    Injunction and compel the entirety of the pending dispute to arbitration.  A traditional injunction

10    must be predicated upon a cause of action.  Importantly, "wrongful arbitration" is not a cause of

11    action for which a party can sue. <u>Klay v. United Healthgroup, Inc.</u> 376 F.3d 1092, 1098 (11th

12    Cir. 2004). Accordingly, Plaintiff's Complaint fails to state a claim for relief under Fed. R. Civ.

13    P. 12(b)(6).

14        33.   WHEREFORE, for the reasons set forth herein, Ms. Graviet respectfully requests

15    that this Court enter an Order (a) Denying Plaintiff's Motion for a Preliminary Injunction; (b)

16    Grant Defendant's Motion to Compel Arbitration; (c) alternatively dismissing Plaintiff's

17    Complaint for failure to state a claim for relief; and (d) granting any other relief that the Court

18    deems just and necessary under the circumstances.

19

20

21

22

13

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1

2                    <u>**CERTIFICATE OF GOOD FAITH CONFERENCE**</u>

3          Prior to filing these Motions, counsel for Defendant conferred with Philip A. McLeod,

4    counsel for Plaintiff, in an effort to resolve the issues raised herein.  Plaintiff does not consent to

5    the relief requested in these Motions.

6    DATED this 23th day of July, 2012.

7                                            /s/Joshua B. Kons_____
8                                            **JOSHUA B. KONS, CASB NO. 244977**

9                                            **Attorney for Defendant**

10
11
12
13   **JOSHUA B. KONS, CASB NO. 244977**
14   **joshuakons@konslaw.com**
15   **OF COUNSEL TO:**
16   **ECCLESTON LAW OFFICES, P.C.**
17   **One North Franklin St. Suite 2620**
18   **Chicago, Illiniois 60606**
19   **Telephone: (312) 332-0000**
20   **Facsimile: (312) 332-0003**
21
22   **Attorney for Defendant**
23   **PAMELA GRAVIET**
24

25

26

27

28

29
                                       14
DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS

1        **CERTIFICATE OF SERVICE**

2        I HEREBY CERTIFY that on July 23, 2012, I electronically filed the foregoing

3   Opposition to Plaintiff's Motion for Preliminary Injunction, Motion to Compel Arbitration and

4   Alternative Motion to Dismiss with the Clerk of the Court by using the CM/ECF system which

5   will send a notice of electronic filing to the following:

6

7        Philip A. McLeod, CASB No. 101101
8        KEESAL, YOUNG & LOGAN
9        A Professional Corporation
10       450 Pacific Ave.
11       San Francisco, California 94133
12       Telephone: (415) 398-6000
13       Facsimile: (415) 981-0136
14       philip.mcleod@kyl.com
15
16

17                              By:     s/Joshua B. Kons_____
18                                      **JOSHUA B. KONS, CASB NO. 244977**
19

15

DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION,
MOTION TO COMPEL ARBITRATION AND
ALTERNATIVE MOTION TO DISMISS